## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 C 6933 Judge Blanche M. Manning |
| v. | ) ) | Magistrate Judge Denlow |
| AGL RESOURCES, INC., a Georgia Corporation; NUI CAPITAL CORP., a Florida corporation; and PIVOTAL UTILITY HOLDINGS, INC., f/k/a NUI UTILITIES, INC., a New Jersey corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Central States, Southeast and Southwest Areas Health and Welfare Fund and Howard McDougall, trustee complaining of Defendants NUI Capital Corp., a Florida corporation; Pivotal Utility Holdings, Inc., f/k/a NUI Utilities, Inc., a New Jersey corporation and AGL Resources Inc., a Georgia corporation, allege as follows:

## COUNT I
## NUI CAPITAL CORP.

## JURISDICTION AND VENUE

1.     This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. and is a suit to recover employer contributions owed to the Trustees of the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the Central States,

Southeast and Southwest Areas Health and Welfare Fund ("Health and Welfare Fund") by Defendant.  Jurisdiction is premised upon Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).

2.    The Pension Fund and Health and Welfare Fund are "employee benefit plans" as that term is defined in ERISA and is administered in the Eastern Division of the Northern District of Illinois.  Venue is proper in this district under § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and pursuant to the forum selection clause of the Pension Fund and Health and Welfare Fund trust agreements.

## PARTIES AND RELATIONSHIPS

3.    The Pension Fund is an employee benefit plan and trust, with its administrative office and its principal and exclusive offices at 9377 West Higgins Road in Rosemont, Cook County, Illinois.

4.    The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers.  All principal and income from such contributions and investments thereof are held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries and paying the administrative expenses of the Pension Fund.

5.    The Health and Welfare Fund is employee benefit plan and trust, with its administrative office and its principal and exclusive offices at 9377 West Higgins Road in Rosemont, Cook County, Illinois.

6.    The Health and Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining

agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Health and Welfare Fund and paying the administrative expenses of the Health and Welfare Fund.

7.    Plaintiff Howard McDougall is a Trustee and a "fiduciary" of the Pension Fund as that term is defined in ERISA and brings this action in his capacity as a Trustee and fiduciary.

8.    Defendant NUI Capital Corp., is a Florida corporation ("NUI"). NUI is an "employer" and a "party-in-interest" as those terms are defined by, respectively, 29 U.S.C. §§1002(5) and 1002(14)(c) of ERISA.

9.    Local Union No. 769 ("Local 769") and Local Union 385 of the IBT ("Local 385") are labor organizations which represented, for the purpose of collective bargaining, certain employees of NUI and employees of other employers in industries affecting interstate commerce.

## CERTAIN RELEVANT BACKGROUND EVENTS

10.    For all periods relevant, NUI was signatory to collective bargaining agreements with Local 769 and Local 385. Pursuant to these agreements, NUI agreed to pay contributions to the Pension Fund and the Health and Welfare Fund on behalf of covered employees.

11.    NUI also agreed to be bound by the Pension Fund trust agreement and the Health and Welfare Fund trust agreement. The Pension Fund and the Health and Welfare Fund trust agreements required NUI to "make continuing and prompt payments to the

[Pension and Health and Welfare Fund[s] as required by the applicable collective bargaining agreements."

12.    The Pension Fund and the Health and Welfare Fund rely upon participating employers to self-report the work history of eligible employees in order to prepare a monthly bill and determine benefit eligibility.   The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks and/or days worked by the eligible employees.

13.    During the period of December 22, 2002 through December 25, 2005, NUI reported employee work history to the Pension Fund and to the Health and Welfare Fund.

14.    Pursuant to the Pension and Health and Welfare Fund trust agreements, the Pension Fund and the Health and Welfare Fund are permitted to audit work history records of participating employers' records in order to verify the accuracy and completeness of the employee work history reported by participating employers.

15.    The Pension Fund and the Health and Welfare Fund audited the records of NUI for the period of December 22, 2002 through December 25, 2005.

16.    The audit revealed that NUI breached the collective bargaining agreements by failing to submit employer contributions to the Pension Fund and the Health and Welfare Fund on behalf of all covered employees.

17.    Pursuant to rules promulgated by the Trustees in accordance with the Pension Fund and Health and Welfare Fund trust agreements and Section 502(g)(2)(d) and (e) of ERISA, 29 U.S.C. §1132(g)(2(d) and (e), NUI is required to pay all audit fees and costs incurred by the Pension Fund and the Health and Welfare Fund in connection with the audit of the records of NUI.

18.     The Pension Fund and the Health and Welfare Fund trust agreements provide that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions [, or withdrawal liability] or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an employer for contributions [or withdrawal liability] owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions [or withdrawal liability]. The interest rate after entry of a judgment against an Employer for contributions [or withdrawal liability] shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

*  The bracketed words "or withdrawal liability" appear only in the Pension Fund trust agreement.

## **STATUTORY AUTHORITY**

19.     Section 515 of ERISA, 29 U.S.C. §1145, provides:

> Sec. 515. Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

20.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides:

(2)     In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A)     the unpaid contributions,

(B)     interest on the unpaid contributions,

(C)     an amount equal to the greater of --

(i)     interest on the unpaid contributions, or

(ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)     such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## STATUTORY AND CONTRACTUAL VIOLATIONS

21.     The audit of the records of NUI for the period of December 22, 2002 through December 25, 2005 revealed that NUI breached the provisions of ERISA, the collective bargaining agreement and the Pension Fund and the Health and Welfare Fund trust agreements by failing to accurately report employee work history and pay all of the contributions (and interest due thereon) owed to the Pension Fund and the Health and Welfare Fund.

22.    Despite demands that NUI perform its statutory and contractual obligations with respect to making contributions to the Pension Fund and the Health and Welfare Fund, the Defendant NUI has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 21.

23.    Defendant NUI owes to the Pension Fund in excess of $1,900 for unpaid contributions and accumulated interest thereon and the Defendant owes to the Health and Welfare Fund in excess of $1,500 for unpaid contributions and accumulated interest thereon.

**WHEREFORE**, Plaintiffs request the following relief:

A.    A judgment against the Defendant NUI Capital Corp., a Florida corporation and in favor of Plaintiffs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), for:

(i)    the unpaid contributions owed to Central States, Southeast and Southwest Areas Pension Fund and the Central States Southeast and Southwest Areas Health and Welfare Fund;

(ii)    interest on the unpaid contributions computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged;

(iii)    an amount equal to the greater of the interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

(iv)    audit fees and costs; and

(v)    attorney's fees and costs.

B.    Post-judgment interest computed at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged.

C.    That this Court retain jurisdiction of the cause pending compliance with its orders.

D.    For such further or different relief as the Court may deem proper and just.


## COUNT II
## PIVOTAL UTILITY HOLDINGS, INC., f/k/a NUI UTILITIES, INC.

24.    Plaintiffs incorporate by reference paragraphs 1-7, paragraph  12, 14, 18 - 20 of Count I as and for paragraph 24 of Count II of the Complaint.

25.    On or about March 11, 2005, NUI Utilities, Inc. changed its name to Pivotal Utility Holdings, Inc.

26.    Defendant Pivotal Utility Holdings, Inc., f/k/a NUI Utilities, Inc., is a New Jersey corporation ("Pivotal, f/k/a NUI Utilities").  Pivotal, f/k/a NUI Utilities is an "employer" and a "party-in-interest" as those terms are defined by, respectively, 29 U.S.C. §§1002(5) and 1002(14)(c) of ERISA.

27.    Local Union No. 769 ("Local 769") and Local Union 385 of the IBT ("Local 974") are labor organizations which represented, for the purpose of collective bargaining, certain employees of Pivotal, f/k/a NUI Utilities and employees of other employers in industries affecting interstate commerce.

## CERTAIN RELEVANT BACKGROUND EVENTS

28.    For all periods relevant, Pivotal, f/k/a NUI Utilities was signatory to collective bargaining agreements with Local 769 and Local 385.  Pursuant to these agreements, Pivotal, f/k/a NUI Utilities agreed to pay contributions to the Pension Fund and the Health and Welfare Fund on behalf of covered employees.

29.    Pivotal, f/k/a NUI Utilities also agreed to be bound by the Pension Fund trust agreement and the Health and Welfare Fund trust agreement.  The Pension Fund and the Health and Welfare Fund trust agreements required Pivotal, f/k/a NUI Utilities  to "make continuing and prompt payments to the  [Pension and Health and Welfare Fund[s] as required by the applicable collective bargaining agreements."

30.    During the period of April 1, 2001 through December 31, 2007, Pivotal, f/k/a NUI Utilities reported employee work history to the Pension Fund and during the period of May 8, 2005 through December 31, 2007, Pivotal, f/k/a NUI Utilities reported employee work history to the  to the Health and Welfare Fund.

31.    The Pension Fund and the Health and Welfare Fund audited the records of Pivotal, f/k/a NUI Utilities for the period of December 22, 2002 through December 25, 2005.

32.    The audit revealed that Pivotal, f/k/a NUI Utilities breached the collective bargaining agreements by failing to submit employer contributions to the Pension Fund and the Health and Welfare Fund on behalf of all covered employees.

33.    Pursuant to rules promulgated by the Trustees in accordance with the Pension Fund and Health and Welfare Fund trust Agreements and Section 502(g)(2)(d) and (e) of ERISA, 29 U.S.C. §1132(g)(2(d) and (e), Pivotal, f/k/a NUI Utilities is required to pay all audit fees and costs incurred by the Pension Fund and the Health and Welfare Fund in connection with the audit of the records of Pivotal, f/k/a NUI Utilities.

## STATUTORY AND CONTRACTUAL VIOLATIONS

34.    The audit of the records of Pivotal, f/k/a NUI Utilities for the period of December 22, 2002 through December 25, 2005 revealed that Pivotal, f/k/a NUI Utilities breached the provisions of ERISA, the collective bargaining agreement and the Pension Fund and the Health and Welfare Fund trust agreements by failing to accurately report employee work history and pay all of the contributions (and interest due thereon) owed to the Pension Fund and the Health and Welfare Fund.

35.    Upon information and belief, Defendant Pivotal, f/k/a NUI Utilities breached the provisions of ERISA, the collective bargaining agreements and the Pension Fund and Health and Welfare Funds trust agreements by failing to pay all contributions (and interest due thereon) owed to the Pension Fund for the period of April 1, 2001 through December 21, 2002 and to the Pension Fund and the Health and Welfare Fund for the period December 26, 2005 through December 31, 2007.

36.    Despite demands that Pivotal, f/k/a NUI Utilities perform its statutory and contractual obligations with respect to making contributions to the Pension Fund and the Health and Welfare Fund, Defendant Pivotal, f/k/a NUI Utilities has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraphs 34 and 35.

37.    Defendant Pivotal, f/k/a NUI Utilities owes to the Pension Fund in excess of $91,000 for unpaid contributions and accumulated interest thereon and the Defendant owes to the Health and Welfare Fund in excess of $191,000 for unpaid contributions and accumulated interest thereon.

38.    Defendant Pivotal, f/k/a NUI Utilities also owes to the Pension Fund amounts for the for the period of April 1, 2001 through December 21, 2002 and owes to the Pension

Fund and the Health and Welfare Fund amounts for the period December 26, 2005 through December 31, 2007 that are currently not known with specificity, but will be determined in the course of discovery, in unpaid contributions and interest as a result of the conduct set forth in paragraph 35.

**WHEREFORE**, Plaintiffs request the following relief:

A.     A judgment against the Defendant Pivotal Utility Holdings, Inc., f/k/a NUI Utilities, Inc., a New Jersey corporation and in favor of Plaintiffs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), for:

(i)     the unpaid contributions owed to Central States, Southeast and Southwest Areas Pension Fund and the Central States Southeast and Southwest Areas Health and Welfare Fund;

(ii)     interest on the unpaid contributions computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged;

(iii)     an amount equal to the greater of the interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

(iv)     audit fees and costs; and

(v)     attorney's fees and costs.

B.     Post-judgment interest computed at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged.

C.     That this Court retain jurisdiction of the cause pending compliance with its orders.

D.     For such further or different relief as the Court may deem proper and just.

**COUNT III**
**AGL RESOURCES INC.**

39.     Plaintiffs incorporate by reference paragraphs 1-23 of Count I and paragraphs 24-38 of Count II for paragraph 39 of Count III of the Complaint.

40.     Defendant AGL Resources INC., is a Georgia corporation ("AGL").  AGL is an "employer" and a "party-in-interest" as those terms are defined by, respectively, 29 U.S.C. §§1002(5) and 1002(14)(c) of ERISA.

41.     Defendant AGL entered into a participation agreement pursuant to which it agreed to pay contributions to the Pension Fund and the Health and Welfare Fund.

42.     For all times relevant, AGL was the parent company of NUI and Pivotal, f/k/a NUI Utilities.

43.     Defendant AGL agreed to be bound by the labor agreements signed by NUI and Pivotal, f/k/a NUI Utilities and the Pension Fund trust agreement and the Health and Welfare Fund trust agreement. Therefore, AGL is liable for the debts and obligations of its subsidiaries.

44.      Defendant AGL owes to the Pension Fund in excess of $92,900 for unpaid contributions and accumulated interest thereon and the Defendant owes to the Health and Welfare Fund in excess of $192,500 for unpaid contributions and accumulated interest thereon.

45.     Defendant AGL also owes to the Pension Fund amounts for the for the period of April 1, 2001 through December 21, 2002 and owes to the Pension Fund and the Health and Welfare Fund amounts for the period December 26, 2005 through December 31, 2007

that are currently not known with specificity, but will be determined in the course of discovery, in unpaid contributions and interest.

**WHEREFORE**, Plaintiffs request the following relief:

A.    A judgment against the Defendant AGL Resources Inc., a Georgia corporation and in favor of Plaintiffs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), for:

(i)    the unpaid contributions owed to Central States, Southeast and Southwest Areas Pension Fund and the Central States Southeast and Southwest Areas Health and Welfare Fund;

(ii)    interest on the unpaid contributions computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged;

(iii)    an amount equal to the greater of the interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

(iv)    audit fees and costs; and

(v)    attorney's fees and costs.

B.    Post-judgment interest computed at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which interest is charged.

C.     That this Court retain jurisdiction of the cause pending compliance with its

orders.

D.     For such further or different relief as the Court may deem proper and just.


Respectfully submitted,


February 1, 2008                         s/ Rathna C. Rodgers
                                         Rathna C. Rodgers (ARDC #06239131)
                                         Attorney for Plaintiffs
                                         Central States, Southeast and Southwest
                                         Areas Pension Fund, Central States, Southeast
                                         and Southwest Areas Health and Welfare Fund
                                         9377 West Higgins Road
                                         Rosemont, Illinois 60018
                                         (847) 518-9800, Ext. 3435
                                         rrodgers@centralstatesfunds.org