# EXHIBIT A

TRUST AGREEMENT

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
PENSION FUND

AS AMENDED THROUGH MAY 31, 2007

F:69376 / 5/30/07

199E

REVISED AND AMENDED TRUST AGREEMENT FOR
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND

This **AGREEMENT** and **DECLARATION** of **TRUST**, made and entered into this sixteenth day of March, 1955 by and between **CENTRAL CONFERENCE OF TEAMSTERS, SOUTHERN CONFERENCE OF TEAMSTERS,** and their affiliated Local Unions, hereinafter referred to collectively as the **"UNION"**, and the **SOUTHERN MOTOR CARRIERS LABOR RELATIONS ASSOCIATION; MOTOR CARRIERS EMPLOYERS CONFERENCE - CENTRAL STATES; CARTAGE EMPLOYERS MANAGEMENT ASSOCIATION; CLEVELAND DRAYMEN ASSOCIATION, INC.;** and **NORTHERN OHIO MOTOR TRUCK ASSOCIATION, INC.;** for and on behalf of themselves, their constituent members, and such other Employers who are or may become parties hereto, hereinafter collectively referred to as the **"EMPLOYER"**, and the individual Trustees, hereinafter referred to as the **"TRUSTEES"**, selected as hereinafter described, accepting the Trust obligations herein declared:

**W I T N E S S E T H:**

**WHEREAS,** the Union and the Employer believe that it is in the best interest of the Employees of such Employer represented by the Union, and the families and dependents of such Employees, to provide for retirement benefits and for that purpose to establish a Trust Fund as hereinafter provided; and

**WHEREAS,** the Union and the Employer have heretofore entered into collective bargaining agreements under the terms of which it is provided that the Employer shall contribute certain agreed-upon sums of money therein set forth to a Pension Fund, which shall be known as the **CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND;** and

**WHEREAS,** Employee Trustees and Employer Trustees have been designated as the Trustees of the Trust in accordance with the provisions of such Agreement.

**NOW THEREFORE,** for and in consideration of the premises and of the mutual covenants and agreements herein contained, the Union and the Employer hereby accept and adopt all of the provisions herein contained, and the Trustees declare that they will receive and hold the contributions and any other money or property which may come into their hands as Trustees (all such contributions, money and property being hereinafter referred to as "the Trust Fund"), with the powers and duties, uses, and purposes as hereinafter set forth, to-wit:

F:69376 / 5/30/07                                                -1-

**Sec. 9. Office of the Fund** - The sole and principal office of the Fund shall be in Rosemont, Illinois, for the transaction of business of the Fund, the exact location of which is to be made known to the parties interested in such Fund. At such office, and at such other places as may be required by law, there shall be maintained all, or any of, the books and records pertaining to the Fund and its administration.

**Sec. 10. No One is Agent Without Written Authority** - No individual or person may act as agent for the Fund unless specifically authorized in writing by the Trustees. No Employer or Union nor any representative of any Employer or Union, in such capacity, is authorized to interpret the Pension Plan, nor can any such person act as agent of the Trustees. Only the Board of Trustees is authorized to interpret the Pension Plan within the scope of its authority.

## ARTICLE III
## CONTRIBUTIONS AND COLLECTIONS

**Sec. 1. Amount of Contributions** - Each Employer shall remit continuing and prompt contributions to the Trust Fund as required by the applicable collective bargaining agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority. The Trustees are authorized to reject any collective bargaining agreement, participation agreement and/or terminate the participation of an Employer (and all contributions from the Employer) whenever they determine either that the agreement is unlawful and/or inconsistent with any rule or requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make contributions to the Trust Fund at different contribution rates for different groups of the Employer's bargaining unit employees). Any such rejection and/or termination by the Trustees of a collective bargaining agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the Employer and all Employees of the Employer from further participation in the Fund on and after such effective date. Upon execution of each new or successive collective bargaining agreement, including but not limited to interim agreements and memoranda of understanding between the parties, each Employer shall promptly submit such contract by certified mail to the:

```
                  Contracts Department
                  Central States, Southeast and
                   Southwest Areas Pension Fund
                  9377 West Higgins Road
                  Rosemont, Illinois  60018-4938.
```

Any agreement or understanding between the parties that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the collective bargaining agreement which alone shall be enforceable.  Except as provided in this Section, Section 7(b) of Article III and Section 20 of Article IV, the obligation to make such contributions shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives a) a signed contract that eliminates or reduces the duty to contribute to the Fund or b) written notification that the Employer has lawfully implemented a proposal to withdraw from the Fund or reduce its contributions at the above-specified address.  The obligation to make such contributions shall continue during periods when the collective bargaining agreement is being negotiated, but such contributions shall not be required in case of strike after contract termination, unless the parties mutually agree otherwise.

**Sec. 2. Time of Payment** - The Trustees shall, by regulation, fix the time for payment of contributions and shall send a copy of such regulations to each Employer required to contribute.

**Sec. 3. Receipt of Payment and Other Property of Trust** - The Trustees are hereby designated as the persons to receive the payments heretofore or hereafter made by the Employers to the Trust Fund, and the Trustees are hereby vested with all right, title and interest in and to such moneys and all interest accrued thereon, and are authorized to receive and be paid the same.  The Trustees agree to receive all such payments, deposits, moneys, insurance and annuity contracts, and other assets and properties described or referred to in Article II and this Article, and to hold same in Trust hereunder for the uses and purposes of the Trust herein created.

**Sec. 4. Collections and Enforcement of Payment** - The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Executive Director when directed by such committee or by the Trustees, shall have the power to demand and collect the contributions of the Employers to the Fund.  Said Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions or other amounts which may be owed to the Trust Fund, without

prejudice, however, to the rights of the Union to take whatever steps which may be deemed necessary for such purpose. The Trustees are authorized to receive all Employer Contributions and apply such contributions in the best interest of the Fund. Nothing herein shall give any Employer the right to designate how any contributions shall be applied.

**Sec. 5. Production of Records** - Each Employer shall promptly furnish to the Trustees, upon reasonable demand, the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All Employers shall annually furnish to the Trustees, if requested by them, a statement showing whether:

(a) the organization is a corporation and the names of all of its officers;

(b) if not a corporation, a certificate stating that it is either a partnership or an individual proprietorship and the names of the partners or the name of the individual proprietor.

The Union will comply with any reasonable request of the Trustees to examine those records of the Union which may indicate the employment record of any Employee whose status is in dispute.

**Sec. 6.** Whenever the Trustees exercise their authority to reject a collective bargaining agreement, participation agreement and/or terminate the participation of an Employer and effect the termination of the Employer and all Employees of the Employer from further participation in the Fund on and after an effective date determined by the Trustees, and there is related litigation to which the Trustees (or any of the Trustees) and/or the Fund and the Employer are parties (regardless of which entity or entities commenced the litigation), the Trustees and the Fund, at the conclusion of the litigation by judgment or settlement (except by a judgment that in effect invalidates the Trustees' rejection of the collective bargaining agreement, participation agreement and/or termination of participation), shall be entitled to recover from the Employer a payment in the amount of the attorneys' fees and litigation costs incurred by the Trustees and/or the Fund in the course of the litigation. In addition, the Employer shall be liable for any attorneys' fees and costs in any litigation or arbitration filed by the Fund or filed by or initiated by the Employer (including declaratory judgment actions) in which the Fund prevails, including but not limited to suits or arbitrations relating to withdrawal liability, delinquent contribution payments or contribution refunds, audit demands and any retaliation claims

(including retaliation claims under §510 of ERISA). The duty imposed upon an Employer to pay fees and costs applies to a declaratory judgment action as well as a suit brought by an Employer that is dismissed for any reason with or without prejudice including cases dismissed for improper venue or lack of subject matter or personal jurisdiction.

**Sec. 7.**

(a) An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement accepted by the Fund on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement.

(b) An Employer's obligation to contribute to the Fund will immediately cease in the event the Union loses its status as bargaining representative of the employee through an NLRB election or valid disclaimer of interest by the Union. In the event the Union loses its representative status through an NLRB election, the duty to contribute shall cease on the day the election results are certified by the NLRB. This provision shall supersede any contrary provision in any agreement, including any collective bargaining agreement, participation agreement, this Agreement and the certification clause of the Fund's billing forms.

## ARTICLE IV
## POWERS AND DUTIES OF TRUSTEES

**Sec. 1.** The Trustees shall have authority to control and manage the operation and administration of the Trust in accordance with applicable law.

**Sec. 2.** The Trustees shall hold, manage, care for, and protect the Trust Fund and collect the income therefrom and contributions thereto, except to the extent that any of these functions or responsibilities are assigned to another entity or entities pursuant to any provision of this Article.

**Sec. 3.**

(a) The Trustees appoint Goldman Sachs Asset Management, L.P. (hereinafter identified as "Goldman Sachs") and Northern Trust Global Advisors, Inc. (hereinafter identified as "Northern Trust") each as a Named Fiduciary of the Fund as defined in Section 402 of the Employee Retirement Income Security Act of 1974, with such rights, powers, authority, duties and responsibilities as are stated in an agreement with each such Named Fiduciary (each agreement hereinafter collectively identified as a "Named

Fiduciary Agreement"), an agreement which was entered into by the Trustees with Goldman, Sachs & Co. as of May 1, 1999, and which was assigned to Goldman Sachs pursuant to written consent by the Trustees effective October 1, 2003, and an agreement which was entered by the Trustees with Northern Trust as of April 1, 2005, and as are stated in a Consent Decree (hereinafter identified as "the Consent Decree") entered September 22, 1982, as those agreements and the Consent Decree were heretofore and are hereafter amended. The appointment of each of Goldman Sachs and Northern Trust as a Named Fiduciary of the Fund shall remain effective until termination or resignation in accordance with the Named Fiduciary Agreement to which Goldman Sachs or Northern Trust is a party.

(b) Assets of the Fund, in addition to those assets for which either Goldman Sachs or Northern Trust is responsible as a Named Fiduciary of the Fund, shall include assets allocated to and managed in the Passive Fixed-Income Index Account ('Passive Fixed-Income Index Account') established and maintained in accordance with section II.E. of the Consent Decree as amended effective June 1, 2003. All assets of the Fund in the Passive Fixed-Income Index Account shall be managed by one or more investment managers, as defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, each such investment manager to be appointed by the Trustees upon court approval of the appointment.

(c) Each investment manager appointed by Goldman Sachs or Northern Trust in its capacity as a Named Fiduciary of the Fund, and each investment manager for the Passive Fixed-Income Index Account appointed by the Trustees upon court approval of the appointment, shall have the power and authority, in its sole discretion, to invest and reinvest the principal and income of the Trust Fund, delegated to it for management, in such securities, common and preferred stock, mortgages, notes, real estate or other property as shall be permissible investments in accordance with applicable law and agreements, including the specific terms and conditions of its agreement as an investment manager of the Fund, and may sell or otherwise dispose of such securities or property at any time and from time to time as it determines to be in accordance with its fiduciary obligations.

(d) With respect to all assets of the Fund, except those assets which are then subject to the exercise by Goldman Sachs or Northern Trust of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, and except those assets which are then managed in the Passive Fixed-Income Index Account, the Trustees shall have the power, in their sole discretion, to invest

F:69376 / 5/30/07                              -11-

    and reinvest all or any part of the Trust Fund in such securities and other property as shall be permissible investments by them in accordance with applicable law, and may sell or otherwise dispose of such securities or other property at any time and from time to time as they determine to be in accordance with their fiduciary obligations.

 (e) The overall investment policy objective of the Fund is to invest and manage the assets of the Trust Fund in a prudent and conservative yet productive manner, in order to enhance the ability of the Fund to meet its obligations to participants and beneficiaries. Subject to the overall investment policy objective of the Fund, Goldman Sachs and Northern Trust each shall develop the short-term and long-term investment objectives and policies of the Fund for the assets of the Fund for which it is responsible, in accordance with the Consent Decree, after consultation with the Trustees and with appropriate regard for the actuarial requirements of the Fund. The investment policy statement for the Passive Fixed-Income Index Account will be established by the Trustees upon approval by the Court.

 (f) Goldman Sachs and Northern Trust each shall have the power and authority, in its sole discretion, to invest and reinvest all or any part of the assets of the Trust Fund for which it is responsible in the following group trust, selected and designated by either or both of them and maintained as a domestic trust in the United States: Barclays Global Investors, N.A. Investment Funds for Employee Benefit Trusts, which is maintained by Barclays Global Investors, N.A. To the extent Goldman Sachs and Northern Trust (or either of them) invest any part of the Trust Fund in that group trust, the group trust is and will be adopted as part of the Fund and the trust instrument of such group trust and any amendments of that instrument are and will be incorporated in this Agreement, provided that such trust is and continues to be a tax-exempt organization under Section 501(a) of the Internal Revenue Code.

 **Sec. 4.** With respect to all assets of the Fund, except those assets which are then subject to the exercise by Goldman Sachs or Northern Trust of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, and except those assets which are then managed in the Passive Fixed-Income Index Account, any part of the Trust Fund which is not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time select and any such deposit or deposits, or disbursements therefrom, shall be made in the name of the Trust in the manner designated by the Trustees and upon the signature(s) designated by the Trustees.

**Sec. 5.** The Trustees shall keep true and accurate books of account and a record of all their transactions.

**Sec. 6.** The Trustees shall engage one or more independent qualified public accountants and enrolled actuaries to perform all services required by and in accordance with applicable law and such other services as the Trustees deem necessary.

**Sec. 7.** The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram, or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

**Sec. 8.** Any Trustee, to the extent permitted by applicable law, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

**Sec. 9.** The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of the Agreement, and the Articles in the Central States, Southeast and Southwest Areas Agreements creating the Pension Fund. All rules and regulations adopted by action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust, and all persons claiming any benefits hereunder. The Trustees are vested with discretionary and final authority in adopting rules and regulations for the administration of the Trust Fund.

**Sec. 10.** Any Successor Trustee appointed in accordance with the provisions of this Agreement, upon accepting in writing the terms of this Trust, in a form satisfactory to the Trustees, shall be vested with all of the rights, powers and duties of his predecessor.

**Sec. 11.**

(a) The Trustees may assign, from time to time, various administrative matters to such committees and subcommittees of Trustees, or to such other individuals or organizations, as they may deem necessary or appropriate in their sole discretion. The Trustees may also assign and delegate, from time to time, specified trustee responsibilities to committees and subcommittees of Trustees, as they deem necessary or appropriate in their sole discretion. Committees and subcommittees of Trustees shall consist of an equal number of Employer and Employee Trustees.

(b) The Trustees may establish a Public Advisory Board consisting of four (4) persons, two (2) to be designated by a majority of the Employer Trustees and two (2) to be designated by a majority of the Employee Trustees. Such Public Advisory Board, if established, shall act solely in an advisory and consultant capacity and shall not have or exercise any fiduciary powers, responsibilities or duties. None of the members of said Board, individually or collectively, shall have or exercise any discretionary authority or discretionary control respecting management of the Fund, or have or exercise any authority or control respecting management or disposition of any assets of the Fund, or render any investment advice for any fee or other consideration, or have or exercise any discretionary authority or discretionary responsibility in the administration of the Fund. The Trustees shall establish procedures for submission of matters to the Public Advisory Board, if established, for advice and consultation by said Board. Any payment of compensation and expenses for members of said Board shall be determined by the Trustees.

(c) The Trustees shall appoint an Executive Director, who shall, subject to the directions of the Trustees with respect thereto, be responsible to the Trustees and/or any committee thereof for coordinating the administration of the Fund's assets, office and personnel, for the coordination and administration of accounting and actuarial services, for the preparation of all reports and other documents required to be filed or issued in accordance with law, for the performance of ministerial duties in conformance therewith, and for such other duties duly assigned to him by action of the Trustees. The Executive Director shall be the custodian of the documents and other records of the Fund. To the extent this subsection is contrary to or inconsistent with a Named Fiduciary Agreement, in its description of authority and responsibilities of the Executive Director, this subsection shall be inapplicable.

(d) There shall exist an internal audit division of the Fund, for review of administrative expenditures, benefit disbursements and the allocation of income between investments, administration and benefits, and for such other responsibilities as may be assigned by the Executive Director.

**Sec. 12.** No party dealing with the Trustees shall be obligated:

(a) to see the application to the trust purposes, herein stated, of any money or property belonging to the Trust Fund, or

(b)  to see that the terms of this Agreement have been complied with, or

(c)  to inquire into the necessity or expediency of any act of the Trustees.

Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon:

(1)  that at the time of the delivery of said instrument the Trust was in full force and effect,

(2)  that the instrument was executed in accordance with the terms and conditions of this Agreement, and

(3)  that the Trustees were duly authorized and empowered to execute the instrument.

**Sec. 13.**  The Trustees shall, by regulation, establish rules relating to payments of contributions by Employers for Employees during periods of such Employees' illness or disability and related matters but not contrary to applicable collective bargaining agreements.

**Sec. 14.**  The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a)  To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Employees involved.

(b)  To keep property and securities registered in the names of the Trustees or in the name of any other individual or entity duly designated by the Trustees.

(c)  To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees and in accordance with applicable law, to carry out the purposes of such Trust.

(d)  To pay out of the funds of the Trust all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof.

    (e)    To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

    (f)    To sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith, except that the powers enumerated in this subsection shall not be exercisable by the Trustees with respect to those assets of the Fund as are then subject to the exercise by Goldman Sachs or J.P. Morgan of its rights, powers, authority, duties and responsibilities as a Named Fiduciary of the Fund, or those assets which are then managed in the Passive Fixed-Income Index Account.

**Sec. 15.** The Trustees shall be entitled to receive reasonable compensation for services rendered, and the reimbursement of expenses properly and actually incurred, in the performance of their duties to the Fund; except that no Trustee who already receives full-time pay from an Employer or an association of Employers or from the Union shall receive compensation from the Fund, except for reimbursement of expenses properly and actually incurred.

**Sec. 16.** The Trustees shall use and apply the Trust Fund for the following purposes:

    (a)    To pay or provide for -

        (1)    the payment of all reasonable and necessary expenses of collecting the contributions and administering the affairs of this Trust, including the employment of such administrative, legal, actuarial, expert, and clerical assistance as may be reasonably necessary,

        (2)    the purchasing, owning or leasing of such premises as may be necessary for the operation of the affairs of the Trust, and

        (3)    the purchase or leasing of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate to the performance of their duties.

    (b)    To pay or provide for the payment of retirement and related benefits to eligible Employees in accordance with the terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder by the Trustees.

**Sec. 17.** The Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers. The Trustees are vested with discretionary and final authority in construing plan documents of the Pension Fund.

**Sec. 18.** The Trustees, by resolution, shall provide for fidelity bonds, in such amounts as they may determine, for their employees and for the Trustees, the cost of which shall be paid by the Fund. The Trustees may purchase insurance coverage to protect the Fund from liability arising out of any error or omission of any Trustee or employee of the Trust, in accordance with applicable law, the cost of which policy shall be paid by the Fund.

**Sec. 19.** The Trustees shall provide participants and beneficiaries such information as is required by law.

**Sec. 20.** The Trustees are authorized to reject any collective bargaining agreement, participation agreement and/or terminate the participation of an Employer (and all contributions from the Employer) whenever they determine either that the agreement is unlawful and/or inconsistent with any rule or requirement for participation by Employers in the Fund and/or that the Employer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of, the Fund (including but not limited to any arrangement in which the Employer is obligated to make contributions to the Trust Fund on behalf of some but not all of the Employer's bargaining unit employees, and any arrangement in which the Employer is obligated to make contributions to the Trust Fund at different contribution rates for different groups of the Employer's bargaining unit employees). Any such rejection and/or termination by the Trustees of a collective bargaining agreement shall be effective as of the date determined by the Trustees (which effective date may be retroactive to the initial date of the term of the rejected agreement) and shall result in the termination of the Employer and all Employees of the Employer from further participation in the Fund on and after such effective date.

## ARTICLE V
## CONTROVERSIES AND DISPUTES

**Sec. 1.** In any controversy, claim, demand, suit at law, or other proceeding between any participant, beneficiary, or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public record, and any other evidence pertinent to the issue involved.

**Sec. 2.** All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund. To the extent this section is contrary to or inconsistent with a Named Fiduciary Agreement, this section shall be inapplicable.

**Sec. 3.** The Trustees may, in their sole discretion, compromise or settle any claim or controversy in such manner as they think best, and any decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Trust. To the extent this section is contrary to or inconsistent with a Named Fiduciary Agreement, this section shall be inapplicable.

## ARTICLE VI
## OPERATION OF BOARD OF TRUSTEES

**Sec. 1. Officers** - The Board of Trustees shall at each meeting designate a presiding Chairman. The Chairmanship shall be rotated between the Employee Trustees and the Employer Trustees.

**Sec. 2. Quorum** - A quorum of the Trustees for the transaction of business, except as otherwise specifically provided herein, shall consist of at least six (6) Trustees, three (3) of whom shall be representative of the Employers and three (3) of whom shall be representative of the Employees. A quorum of a committee shall consist of a majority of the members thereof. Upon each matter voted upon at any meeting of the Trustees, the Employee Trustees and the Employer Trustees shall each have the same number of votes based upon the larger number of Employee or Employer Trustees in attendance, as the case may be; provided, however, that the vote or votes cast by each such Trustee shall be cast as an individual Trustee and not as a part of a block. All actions of the Trustees at meetings shall be by majority vote of those present and voting, a quorum being present. No Trustee may vote by proxy.

**Sec. 2. Reciprocity Agreements** - The Trustees shall be authorized to enter into reciprocity agreements with other labor organizations and other pension funds in which such labor organizations participate.

**Sec. 3. Merger** - The Trustees shall have the power to merge with any other fund established for similar purposes as this Fund, under terms and conditions mutually agreeable to the respective Boards of Trustees. No participant's or beneficiary's accrued benefit will be lower immediately after the effective date of any such merger than the benefit immediately before that date.

## ARTICLE XIII
## VESTING OF RIGHTS

The Trustees shall establish standards for the vesting of benefits which conform to no less than the minimum standards required by law. No Employee or other person shall have any vested interest or right in the Trust Fund except as provided by the Trustees in conformance with applicable law.

## ARTICLE XIV
## MISCELLANEOUS

**Sec. 1.** The Trustees will issue a credit for contributions that have been billed to an Employer if (1) the related work history was reported by mistake of fact or law (other than a mistake about plan qualification or tax-exempt status pursuant to the Internal Revenue Code) as determined by the Trustees and (2) the request for credit is received within ten years after the related work history was billed. If an Employer no longer has an obligation to contribute to the Fund and has satisfied his withdrawal liability assessment, the Trustees will refund contributions paid by an Employer to the Trust if (1) such contributions were made by a mistake of fact or law (other than a mistake about plan qualification or tax-exempt status pursuant to the Internal Revenue Code) as determined by the Trustees and (2) application therefor is received within ten years after payment of the contributions. An Employer shall not have a right to a refund of contributions made more than ten years prior to his application therefor. The amount to be returned to the Employer, by credit or refund, is the excess of the amount contributed or paid over the amount that would have been contributed or paid had no mistake been made (this amount is the excess contribution or overpayment). Interest or earnings attributable to an excess contribution shall not be returned to the Employer, and any losses attributable to an excess contribution must reduce the amount returned to the Employer. For purposes of the previous sentence, plan-wide investment experience may be applied to the excess contribution in calculating losses. In no event shall Employers, directly or indirectly, participate in the disposition of the Trust Fund or receive any benefits from the Trust Fund.

**Sec. 2.** The Union or the Employer may, at any time, demand of the Trustees an accounting with respect to any and all accounts upon agreement to pay necessary expenses thereof. The Trustees shall be entitled, at any time, to have a judicial settlement of their accounts and judicial determination of any questions in connection with the administration or distribution thereof. Any Trustee who has resigned, been removed from office, or not been reappointed shall execute all instruments necessary to transfer the Trust Fund.

**Sec. 3.** In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the Trustees may withhold such payment until an adjudication of such question or dispute, satisfactory to the Trustees, in their sole discretion, shall have been made, or the Trustees shall have been adequately indemnified against loss to their satisfaction.

**Sec. 4.** Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability and/or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an Employer for contributions and/or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions and/or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions and/or withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

**Sec. 5.** Where used in this Agreement, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural, in all cases where such construction would so apply.

**Sec. 6.** The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Agreement or be construed as part thereof.

**Sec. 7.** This Agreement shall in all respects be construed according to and governed by the laws of the State of Illinois, including but not limited to the laws applicable to the rate of interest in the State of Illinois, except as such laws may be preempted by the laws and regulations of the United States. In all actions taken by the Trustees to enforce the terms of this Trust Agreement, including but not limited to actions to collect delinquent contributions from employers or to conduct audits of contributing employers' records as authorized by Article III of this Agreement, the ten-year Statute of Limitations applicable to actions on written contracts in the State of Illinois shall apply, provided that the limitations period for any such action shall not begin to accrue until the date upon which the Trustees and the Fund receive actual notice of the cause of action, claim and liability to which the limitations period is applicable. Each Employer shall accurately and completely report the work history of its eligible Employees and shall not report anyone who is not an Employee and shall not report any Employee for any period contributions are not due under the terms of the agreements that have been disclosed to the Fund. In the event an Employer's reporting error (including errors of commission and omission) causes the Fund to pay benefits that are not owed under the Plan, the Employer agrees to reimburse the Fund the amount of the benefit payment plus interest at the rate set forth in Section 4 of this Article, less the amount of the erroneous contribution paid by the Employer.

**Sec. 8.** The method of computation of any employer withdrawal liability imposed by the Multiemployer Pension Plan Amendments Act of 1980 and payable to the Trust Fund shall be the Modified Basic Method (Two Pool Approach) as described in Section 4211 (c)(2) of the Employee Retirement Income Security Act of 1974, as amended, to be applied with a graduated increase in the extended period for determination of specific employer withdrawal liability allocations (5-year period in 1980, 6-year period in 1981, and so on until a 10-year period in 1985 and subsequent years), as described in Section 4211 (c)(5)(C) of the Employer Retirement Security Act of 1974, as amended, relative to any employer withdrawal after September 25, 1980.

**Sec. 9.** No person shall serve, or be permitted to serve, as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, adviser, provider of goods or services or consultant of the Fund, or as its representative in any capacity, or to serve in any capacity that involves decision making authority or custody or control of the moneys, funds or assets of the Fund, if such person has been convicted of: robbery, bribery, extortion, embezzlement, fraud, grand larceny, burglary, arson, a felony violation of Federal or State law involving substances defined in section 802(6) of title 21 of the United States Code (hereinafter