## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, AND HOWARD McDOUGALL, Trustee,**<br><br>Plaintiff,<br><br>v.<br><br>**AGL RESOURCES, INC., a Georgia Corporation, NUI CAPITAL CORP., a Florida Corporation; and PIVOTAL UTILITY HOLDINGS, INC., f/k/a NUI UTILITIES, INC., a New Jersey Corporation,**<br><br>Defendant. | No.  07 C 6933<br><br>Judge Blanche M. Manning<br>Magistrate Judge Denlow |

## DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIM AGAINST PLAINTIFFS

Defendants AGL Resources, Inc., NUI Capital Corporation and Pivotal Utility Holdings, Inc., f/ka NUI Utilities, Inc. by their attorneys, Littler Mendelson, P.C. hereby file this Answer to Plaintiffs' Second Amended Complaint at Law and Counterclaim against Plaintiffs.  Defendants state as follows:

## ANSWER

1.      This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. and is a suit to recover employer contributions owed to the Trustees of the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health and Welfare Fund") by Defendant. Jurisdiction is premised upon Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).

**ANSWER:**  Defendants admit that Plaintiffs purport to bring and maintain this action in

accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. and have brought suit to recover employer contributions allegedly owed to the Trustees of the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health and Welfare Fund") by Defendant.  Defendants further admit Jurisdiction is premised upon Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).  Defendants deny that any recovery for Plaintiffs whatsoever is appropriate.  Defendants deny the remaining allegations of Paragraph 1 of the Second Amended Complaint.

      2.     The Pension Fund and Health and Welfare Fund are "employee benefit plans" as that term is defined in ERISA and is administered in the Eastern Division of the Northern District of Illinois. Venue is proper in this district under § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and pursuant to the forum selection clause of the Pension Fund and Health and Welfare Fund trust agreements.

      **ANSWER:**  Defendants admit the allegations of Paragraph 2 of the Second Amended Complaint.

      3.     The Pension Fund is an employee benefit plan and trust, with its administrative office and its principal and exclusive offices at 9377 West Higgins Road in Rosemont, Cook County, Illinois.

      **ANSWER:**  Defendants admit the allegations of Paragraph 3 of the Second Amended Complaint.

      4.     The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof are held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries and paying the administrative expenses of the Pension Fund.

      **ANSWER:**  Defendants admit the allegations of Paragraph 4 of the Second Amended

Complaint.

5.     The Health and Welfare Fund is employee benefit plan and trust, with its administrative office and its principal and exclusive offices at 9377 West Higgins Road in Rosemont, Cook County, Illinois.

**ANSWER:**  Defendants admit the allegations of Paragraph 5 of the Second Amended Complaint.

6.     The Health and Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of the Health and Welfare Fund and paying the administrative expenses of the Health and Welfare Fund.

**ANSWER:**  Defendants admit the allegations of Paragraph 6 of the Second Amended Complaint.

7.     Plaintiff Howard McDougall is a Trustee and a "fiduciary" of the Pension Fund as that term is defined in ERISA and brings this action in his capacity as a Trustee and fiduciary.

**ANSWER:**  Defendants admit the allegations of Paragraph 7 of the Second Amended Complaint.

8.     Defendant NUI Capital Corp., is a Florida corporation ("NUI"). NUI is an "employer" and a "party-in-interest" as those terms are defined by, respectively, 29 U.S.C. §§1002(5) and 1002(14)(c) of ERISA.

**ANSWER:**  Defendants admit the allegations of Paragraph 8 of the Second Amended Complaint.

9.     Local Union No. 769 ("Local 769") and Local Union 385 of the IBT ("Local 385") are labor organizations which represented, for the purpose of collective bargaining, certain employees of NUI and employees of other employers in industries affecting interstate commerce.

**ANSWER:**  Defendants admit the allegations of Paragraph 9 of the Second Amended Complaint.

10.    For all periods relevant, NUI was signatory to collective bargaining agreements with Local 769 and Local 385. Pursuant to these agreements, NUI agreed to pay contributions to the Pension Fund and the Health and Welfare Fund on behalf of covered employees.

**ANSWER:**  Defendants deny the allegations of Paragraph 10 of the Second Amended Complaint.

11.    NUI also agreed to be bound by the Pension Fund trust agreement and the Health and Welfare Fund trust agreement. The Pension Fund and the Health and Welfare Fund trust agreements required NUI to "make continuing and prompt payments to the [Pension and Health and Welfare Fund[s] as required by the applicable collective bargaining agreements."

**ANSWER:**  Defendants admit the allegations of Paragraph 11 of the Second Amended Complaint.

12.    The Pension Fund and the Health and Welfare Fund rely upon participating employers to self-report the work history of eligible employees in order to prepare a monthly bill and determine benefit eligibility. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks and/or days worked by the eligible employees.

**ANSWER:**  Defendants admit the allegations of Paragraph 12 of the Second Amended Complaint.

13.    During the period of December 22, 2002 through December 25, 2005, NUI reported employee work history to the Pension Fund and to the Health and Welfare Fund.

**ANSWER:**  Defendants admit the allegations of Paragraph 13 of the Second Amended Complaint.

14.    Pursuant to the Pension and Health and Welfare Fund trust agreements, the Pension Fund and the Health and Welfare Fund are permitted to audit work history records of

participating employers' records in order to verify the accuracy and completeness of the employee work history reported by participating employers.

**ANSWER:** Defendants admit the allegations of Paragraph 14 of the Second Amended Complaint.

15.    The Pension Fund and the Health and Welfare Fund audited the records of NUI for the period of December 22, 2002 through December 25, 2005.

**ANSWER:** Defendants admit the allegations of Paragraph 15 of the Second Amended Complaint.

16.    The audit revealed that NUI breached the collective bargaining agreements by failing to submit employer contributions to the Pension Fund and the Health and Welfare Fund on behalf of all covered employees.

**ANSWER:** Defendants deny the allegations contained in Paragraph 16 of the Second Amended Complaint.

17.    Pursuant to rules promulgated by the Trustees in accordance with the Pension Fund and Health and Welfare Fund trust agreements and Section 502(g)(2)(d) and (e) of ERISA, 29 U.S.C. §1132(g)(2)(d) and (e), NUI is required to pay all audit fees and costs incurred by the Pension Fund and the Health and Welfare Fund in connection with the audit of the records of NUI.

**ANSWER:** Defendants admit the allegations of Paragraph 17 of the Second Amended Complaint.

18.    The Pension Fund and the Health and Welfare Fund trust agreements provide that:

> Non-payment by an Employer of any moneys due shall not relieve any other  Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions [, or withdrawal liability] or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by

law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an employer for contributions [or withdrawal liability] owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions [or withdrawal liability]. The interest rate after entry of a judgment against an Employer for contributions [or withdrawal liability] shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

* The bracketed words "or withdrawal liability" appear only in the Pension Fund trust agreement.

**ANSWER:** Defendants admit the allegations of Paragraph 18 of the Second Amended Complaint.

19.    Section 515 of ERISA, 29 U.S.C. §1145, provides:

Sec. 515. Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

**ANSWER:** Defendants admit the allegations of Paragraph 19 of the Second Amended Complaint.

20.    Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides:

(2)    In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —

    (A)    the unpaid contributions,

    (B)    interest on the unpaid contributions,

    (C)    an amount equal to the greater of –

        (i)    interest on the unpaid contributions, or

        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**ANSWER:**  Defendants admit the allegations of Paragraph 20 of the Second Amended Complaint.

21.    The audit of the records of NUI for the period of December 22, 2002 through December 25, 2005 revealed that NUI breached the provisions of ERISA, the collective bargaining agreement and the Pension Fund and the Health and Welfare Fund trust agreements by failing to accurately report employee work history and pay all of the contributions (and interest due thereon) owed to the Pension Fund and the Health and Welfare Fund.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 21 of the Second Amended Complaint.

22.    Despite demands that NUI perform its statutory and contractual obligations with respect to making contributions to the Pension Fund and the Health and Welfare Fund, the Defendant NUI has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 21.

**ANSWER:**    Defendants admit that Plaintiffs made demands regarding making

contributions to the Pension Fund and the Health and Welfare Fund and that NUI has failed to

pay the amounts requested. Defendants deny that they owe any of the requested contributions.

Defendants further deny the remaining allegations of Paragraph 22 of the Second Amended

Complaint.


23.     Defendant NUI owes to the Pension Fund in excess of $1,900 for unpaid
contributions and accumulated interest thereon and the Defendant owes to the Health and
Welfare Fund in excess of $1,500 for unpaid contributions and accumulated interest thereon.

**ANSWER:** Defendants deny the allegations of Paragraph 23 of the Second Amended

Complaint.


24.     Plaintiffs incorporate by reference paragraphs 1-7, paragraph 12, 14, 18-20 of
Count I as and for paragraph 24 of Count II of the Complaint.

**ANSWER:** Defendants restate their responses to paragraphs 1-7, 12, 14, 18-20 of Count

I as if set forth fully herein.


25.     On or about March 11, 2005, NUI Utilities, Inc. changed its name to Pivotal
Utility Holdings, Inc.

**ANSWER:** Defendants admit the allegations contained in Paragraph 25 of the Second

Amended Complaint.


26.     Defendant Pivotal Utility Holdings, Inc., f/k/a NUI Utilities, Inc., is a New Jersey
corporation ("Pivotal, f/k/a NUI Utilities"). Pivotal, f/k/a NUI Utilities is an "employer" and a
"party-in-interest" as those terms are defined by, respectively, 29 U.S.C. §§1002(5) and
1002(14)(c) of ERISA.

**ANSWER:** Defendants admit the allegations of Paragraph 26 of the Second Amended

Complaint.


27.     Local Union No. 769 ("Local 769") and Local Union 385 of the IBT ("Local
974") are labor organizations which represented, for the purpose of collective bargaining, certain

employees of Pivotal, f/k/a NUI Utilities and employees of other employers in industries affecting interstate commerce.

**ANSWER:** Defendants admit the allegations of Paragraph 27 of the Second Amended Complaint.


28.    For all periods relevant, Pivotal, f/k/a NUI Utilities was signatory to collective bargaining agreements with Local 769 and Local 385. Pursuant to these agreements, Pivotal, f/k/a NUI Utilities agreed to pay contributions to the Pension Fund and the Health and Welfare Fund on behalf of covered employees.

**ANSWER:** Defendants deny the allegations of Paragraph 28 of the Second Amended Complaint.


29.    Pivotal, f/k/a NUI Utilities also agreed to be bound by the Pension Fund trust agreement and the Health and Welfare Fund trust agreement. The Pension Fund and the Health and Welfare Fund trust agreements required Pivotal, f/k/a NUI Utilities to "make continuing and prompt payments to the [Pension and Health and Welfare Fund[s] as required by the applicable collective bargaining agreements."

**ANSWER:** Defendants admit the allegations of Paragraph 29 of the Second Amended Complaint.


30.    One February 29, 2008, the NLRB certified the results of an election which resulted in the decertification of 769 and Local 385 as representatives of the Defendants' employees. As a result, the Defendants withdrew from the Health and Welfare Fund and the Pension Fund.

**ANSWER:** Defendants admit the allegations of Paragraph 30 of the Second Amended Complaint.


31.    During the period of April 1, 2001 through March 1, 2008, Pivotal, f/k/a NUI Utilities reported employee work history to the Pension Fund and during the period of May 8, 2005 through March 1, 2008, Pivotal, f/k/a NUI Utilities reported employee work history to the to the Health and Welfare Fund.

**ANSWER:** Defendants admit the allegations of Paragraph 31 of the Second Amended

Complaint.

32.     The Pension Fund and the Health and Welfare Fund audited the records of Pivotal, f/k/a NUI Utilities for the period of December 22, 2002 through December 25, 2005.

**ANSWER:** Defendants admit the allegations of Paragraph 32 of the Second Amended Complaint.

33.     The audit revealed that Pivotal, f/k/a NUI Utilities breached the collective bargaining agreements by failing to submit employer contributions to the Pension Fund and the Health and Welfare Fund on behalf of all covered employees.

**ANSWER:** Defendants deny the allegations of Paragraph 33 of the Second Amended Complaint.

34.     Pursuant to rules promulgated by the Trustees in accordance with the Pension Fund and Health and Welfare Fund trust Agreements and Section 502(g)(2)(d) and (e) of ERISA, 29 U.S.C. §1132(g)(2)(d) and (e), Pivotal, f/k/a NUI Utilities is required to pay all audit fees and costs incurred by the Pension Fund and the Health and Welfare Fund in connection with the audit of the records of Pivotal, f/k/a NUI Utilities.

**ANSWER:** Defendants admit the allegations of Paragraph 34 of the Second Amended Complaint.

35.     The audit of the records of Pivotal, f/k/a NUI Utilities for the period of December 22, 2002 through December 25, 2005 revealed that Pivotal, f/k/a NUI Utilities breached the provisions of ERISA, the collective bargaining agreement and the Pension Fund and the Health and Welfare Fund trust agreements by failing to accurately report employee work history and pay all of the contributions (and interest due thereon) owed to the Pension Fund and the Health and Welfare Fund.

**ANSWER:** Defendants deny the allegations of Paragraph 35 of the Second Amended Complaint.

36.     Upon information and belief, Defendant Pivotal, f/k/a NUI Utilities breached the provisions of ERISA, the collective bargaining agreements and the Pension Fund and Health and

Welfare Funds trust agreements by failing to pay all contributions (and interest due thereon) owed to the Pension Fund for the period of April 1, 2001 through December 21, 2002 and to the Pension Fund and the Health and Welfare Fund for the period December 26, 2005 through March 1, 2008.

**ANSWER:** Defendants deny the allegations of Paragraph 36 of the Second Amended Complaint.

37.     Despite demands that Pivotal, f/k/a NUI Utilities perform its statutory and contractual obligations with respect to making contributions to the Pension Fund and the Health and Welfare Fund, Defendant Pivotal, f/k/a NUI Utilities has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraphs 35 and 36.

**ANSWER:** Defendants admit that Plaintiffs made demands regarding making contributions to the Pension Fund and the Health and Welfare Fund and that Pivotal, f/k/a NUI Utilities has failed to pay the amounts requested. Defendants deny that they owe any of the requested contributions. Defendants further deny the remaining allegations of Paragraph 37 of the Second Amended Complaint.

38.     Defendant Pivotal, f/k/a NUI Utilities owes to the Pension Fund in excess of $91,000 for unpaid contributions and accumulated interest thereon and the Defendant owes to the Health and Welfare Fund in excess of $191,000 for unpaid contributions and accumulated interest thereon.

**ANSWER:** Defendants deny the allegations contained in Paragraph 38 of the Second Amended Complaint.

39.     Defendant Pivotal, f/k/a NUI Utilities also owes to the Pension Fund amounts for the for the period of April 1, 2001 through December 21, 2002 and owes to the Pension Fund and the Health and Welfare Fund amounts for the period December 26, 2005 through March 1, 2008, that are currently not known with specificity, but will be determined in the course of discovery, in unpaid contributions and interest as a result of the conduct set forth in paragraph 36.

**ANSWER:** Defendants deny the allegations contained in Paragraph 39 of the Second Amended Complaint.

40.    Plaintiffs incorporate by reference paragraphs 1-23 of Count I and paragraphs 24-39 of Count II for paragraph 40 of Count III of the Complaint.

**ANSWER:**    Defendants restate their responses to paragraphs 1-23 of Count I and paragraphs 24-39 of Count II as if set forth fully herein.

41.    Defendant AGL Resources INC., is a Georgia corporation ("AGL"). AGL is an "employer" and a "party-in-interest" as those terms are defined by, respectively, 29 U.S.C. §§1002(5) and 1002(14)(c) of ERISA.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 41 of the Second Amended Complaint.

42.    Defendant AGL entered into a participation agreement pursuant to which it agreed to pay contributions to the Pension Fund and the Health and Welfare Fund.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 42 of the Second Amended Complaint.

43.    For all times relevant, AGL was the parent company of NUI and Pivotal, f/k/a NUI Utilities.

**ANSWER:**    Defendants admit the allegations contained in Paragraph 43 of the Second Amended Complaint.

44.    Defendant AGL agreed to be bound by the labor agreements signed by NUI and Pivotal, f/k/a NUI Utilities and the Pension Fund trust agreement and the Health and  Welfare Fund trust agreement. Therefore, AGL is liable for the debts and obligations of its subsidiaries.

**ANSWER:**    Defendants admit that AGL agreed to be bound by the labor agreements signed by NUI and Pivotal, f/k/a NUI Utilities and the Pension Fund trust agreement and the Health and Welfare Fund trust agreement.    Defendants deny the remaining allegations of Paragraph 44 of the Second Amended Complaint.

-12-

45.    Defendant AGL owes to the Pension Fund in excess of $92,900 for unpaid contributions and accumulated interest thereon and the Defendant owes to the Health and Welfare Fund in excess of $192,500 for unpaid contributions and accumulated interest thereon.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 45 of the Second Amended Complaint.

46.    Defendant AGL also owes to the Pension Fund amounts for the for the period of April 1, 2001 through December 21, 2002 and owes to the Pension Fund and the Health and Welfare Fund amounts for the period December 26, 2005 through March 1, 2008, that are currently not known with specificity, but will be determined in the course of discovery, in unpaid contributions and interest.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 46 of the Second Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

1.    Plaintiffs' claims are barred to the extent that they failed to satisfy all requisite conditions precedent to filing this action.

2.    Some or all of Plaintiffs' claims are barred to the extent they have failed to exhaust the required administrative prerequisites to suit.

3.    Plaintiffs' claims are barred to the extent that the employee whom the auditors identified as the source of Defendants' alleged delinquent contributions did not perform work covered by the applicable collective bargaining agreements.

4.    Plaintiffs' claims or the relief they seek are barred under the doctrines of waiver, estoppel and laches.

5.    Plaintiff has no contractual or legal basis for its claims against Defendants.

6.    The Plaintiffs have not alleged and cannot prove facts sufficient to state a claim for money damages, attorneys' fees, or costs from Defendant.

WHEREFORE, having fully answered, Defendants pray that Plaintiffs take nothing by their Second Amended Complaint; that the Second Amended Complaint be dismissed with prejudice in its entirety; that judgment be entered against Plaintiffs and in favor of Defendants, for all costs and attorneys' fees incurred by it in defending this action; and that Defendants be granted such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

NOW COMES Defendants/Counter-Plaintiffs AGL RESOURCES, INC., NUI CAPITAL CORPORATION and PIVOTAL UTILITY HOLDINGS, INC., F/KA NUI UTILITIES, INC. and brings this Counterclaim against Plaintiffs/Counter-Defendants CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, AND HOWARD MCDOUGALL, TRUSTEE, by stating as follows:

1.      Defendants/Counter-Plaintiffs, bring this action for restitution under federal common law for the refund and or credit of contributions paid by mistake of law or fact.

2.      This Court has personal and subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1331, 29 U.S.C. §§1132(a)(3), (e) and (f), Rule 13 of Federal Rules of Civil Procedure governing compulsory counterclaims, and the federal common law.

3.      Venue in this Court is proper under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391, in that Defendants and Plaintiff may be found in this district and the breach took place in this district.

4.      Plaintiffs/Counter-Defendants Central States, Southeast and Southwest Areas Pension Fund, Central States Southeast and Southwest Areas Health and Welfare Fund (the

"Funds") are employee benefit plans.

5.      Plaintiff/Counter-Defendant Howard McDougall is a Trustee of the Funds.

6.      The Funds audited the records of Defendants/Counter-Plaintiffs for a period between December 2002 and December 2007 (the "Audit").

7.      Thereafter, based upon a mistake of law and fact that they owed Plaintiffs/Counter-Defendants unpaid contributions, Defendants/Counter-Plaintiffs sent Plaintiffs/Counter-Defendants a check in the amount of $50,000.00 (the "Deposit").

8.      Upon receipt, Plaintiffs/Counter-Defendants cashed the $50,000.00 check thereby taking possession and custody of the Deposit.

9.      On or about December 3, 2007, Defendants/Counter-Plaintiffs sent Plaintiffs/Counter-Defendants a letter with attachments (a copy of the letter is attached hereto as Exhibit A) explaining that they owed only $6,430.00 to Plaintiffs/Counter-Defendants in underpayments for the period covered by the audit.    Accordingly, in the same letter, Defendants/Counter-Plaintiffs requested that Plaintiffs/Counter-Defendants return the remaining portion of the Deposit.

10.     On May 19, 2008, counsel for Plaintiffs/Counter-Defendants notified Defendants/Counter-Plaintiffs that the Board of Trustees denied the Defendants/Counter-Plaintiffs' refund/credit request.

11.     Through mistake of fact and law, Defendants-Counter-Plaintiffs made contributions to the Funds that were not due and owning.

12.     Plaintiffs/Counter-Defendants have no right to receive or hold said contributions. Plaintiffs/Counter-Defendants continued retention and use of said contributions violates the terms of their own trust agreements and results in an unjust enrichment of Plaintiffs/Counter-Defendants and other contributing employers, to the harm and detriment of Defendants/Counter-

Plaintiffs.  Defendants/Counter-Plaintiffs demanded a refund or credit of said contributions, but Plaintiffs/Counter-Defendants refuse to relinquish the funds and will continue to do so.

13.     Under all notion of equity and pursuant to Sections of 402, 403(c), 409, 502(a), and 515 of ERISA, 29 U.S.C. §§ 1102, 1103(c), 1109, 1132(a), and 1145, Plaintiffs/Counter-Defendants are obligated to restore or credit the contributions they are wrongfully withholding from Defendants/Counter-Plaintiffs in the amount of $43,670.00.

WHEREFORE, Defendants/Counter-Plaintiffs are entitled to restoration of the contributions that they overpaid to the Funds in the amount of $43,670.00, and any other damages or other remedies this Court deems proper.

Respectfully submitted,

s/ Alan A. Satyr
Alan A. Satyr (#6238021)

Frederick L. Schwartz (#6204341)
Alan A. Satyr (#6238021)
Jordan M. Goodman (#6292897)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601
312.372.5520

Dated: June 5, 2008

Firmwide:85348594.1 039906.1090

**CERTIFICATE OF SERVICE**

I, Alan A. Satyr, an attorney, hereby certifies that on June 5, 2008, a true and correct copy of the foregoing attached Defendants' Answer to Second Amended Complaint and Counterclaim Against Plaintiffs was filed electronically, using the CM/ECF System which will automatically send e-mail notifications of such filing to the following attorney of record.

        Rathna C. Rodgers
        Central States Law Dept.
        9377 West Higgins Road
        Rosemont, Illinois 60018
        rrodgers@centralstatesfunds.org

                        s/ Alan A. Satyr
                        Alan A. Satyr